**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-CR-59 |
| | ) | Hon. T.S. Ellis, III |
| MANISH SINGH, | ) | Trial: October 20, 2020 |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO EXCLUDE EVIDENCE OF NAME AND NATURE OF WEBSITE**

Defendant, Manish Singh, by and through counsel, pursuant to Federal Rules of Evidence 401 and 403, respectfully requests that the Court exclude from trial evidence of the name and nature of the website on which the government alleges Mr. Singh spent a significant portion of the money that he obtained from the alleged victims in this case.

**BACKGROUND**

The United States has charged Mr. Singh, by way of indictment, with four counts of wire fraud in violation of 18 U.S.C. §§ 1343 & 2, one count of inducing interstate travel to defraud in violation of 18 U.S.C. §§ 2314 & 2, and one count of identity theft in violation of 18 U.S.C. §§ 1028(a)(7). Dkt. No. 1. Trial is currently scheduled to begin on October 20, 2020, although the defense has filed a motion to continue the trial. Dkt. No. 32.

The government has filed a trial brief describing the manner in which it intends to prove that Mr. Singh defrauded individuals who went into business with him, whom the government calls Victim 1 and Victim 2. Dkt. 30 at 2-5 (noting that the business was called Sanaa Home and Lifestyle, or Sanaa). In the brief, the government states that it will call its lead agent, who, among other things, "will . . . tell the jury about the Defendant's detailed and voluntary confessions,"

including that "the Defendant admitted to the investigating agents that he had used the victims' money to 'tip' a performer on an adult entertainment website, and showed the agents how to identify these payments on his financial statements. The Defendant also confessed to using the victims' money to purchase a Lexus and to pay his rent." *Id.* at 7-8. Discovery in this case shows that the website referred to by the government's description is myfreecams.com, a well-known website that has been covered extensively in the news media.[1]

Further, according to the trial brief, the government intends to offer summaries of inflows and outflows to bank accounts that Mr. Singh controlled, through a forensic analyst. *Id.* at 5. The summaries "include all of the inflows and outflows from the relevant accounts during the relevant time period, and account for all of the activity in the bank records, not just a select number of transactions." *Id.* at 5-6. A different chart will show, in chronological order, "(1) all of the inflows from Victims 1 and 2 to the Defendant's account, together with the Defendant's own written representations as to what those funds would be used for, and (2) the 1,330 explicitly identifiable outflows from that same account to the adult entertainment website [myfreecams], in a summarized form." *Id.* at 6. According to the government, "[t]his chart directly [shows] that the Defendant's repeated demands for more money were interspersed with uncontrovertibly fraudulent spending of that money, which is relevant to the Defendant's intent to defraud." *Id.*[2]

---

[1] This website is fairly well-known, and has been covered by several newspapers, including The New York Times, the Miami New Times, and CNBC. *See* Wikipedia, "Myfreecams," https://en.wikipedia.org/wiki/MyFreeCams.com (last visited 10/7/2020).

[2] Exhibit 1 contains summary exhibits the government proffered to the defense on October 5. The defense may raise other objections to them.

**ARGUMENT**

While Mr. Singh does not object to an agent testifying that Mr. Singh told the agents that he used the alleged victims' funds to make purchases on "a website unrelated to fabric business or Sanaa," or to charts showing outflows to "a website unrelated to fabric business or Sanaa," (or to using some other neutral description of the website in testimony and exhibits), the exact name and nature of the website at issue are not admissible because they are not relevant, and because evidence that Mr. Singh visited a well-known adult entertainment website, and "tipped performers" on that website, is highly likely to prejudice the jury against him.

**I.      The evidence is inadmissible pursuant to Rule 401.**

Federal Rule of Evidence 401 provides that evidence is relevant if it has a tendency "to make a fact more or less probable than it would be without the evidence; (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the government must prove the elements of wire fraud, fraudulent inducement to travel, and identity theft. As the trial brief lays out, the government's theory is essentially that Mr. Singh, in phone calls, emails, and documents he prepared, conveyed to the Singh's that he was using their money to develop their joint business, Sanaa, when in fact he was not, and when in fact he was spending their money on other things: these are the facts in consequence.

The defense does not dispute that evidence that Mr. Singh told law enforcement agents that he used funds provided by the complainants to make personal purchases on a website unrelated to the fabric business or Sanaa makes it more probable than not that he intended to defraud his partners in Sanaa. Likewise, charts showing inflows and outflows from Mr. Singh's accounts may be relevant evidence of what Mr. Singh did with the money the alleged victims wired to his accounts.

3

But the only fact of consequence with regard to these specific payments to the website – all the government must prove – is that they did not advance the Sanaa business, and that they were unrelated to the Sanaa business. And Mr. Singh will not argue otherwise. He will not contest that the payments to this particular website were unrelated to Sanaa, and has no objection to the agent and exhibits describing the website as unrelated to the business. Thus, the government does not need to do anything more to establish the relevance of these payments and make its point. And this concession means that the evidence that Mr. Singh stated that he had used the victims' money to buy tokens to "'tip' a performer on an adult entertainment website"– as opposed to do something else over the internet unrelated to the Sanaa business – does not make more or less probable that his statements to his partners were fraudulent.

## II.     The evidence is inadmissible pursuant to Rule 403.

All that will be accomplished by allowing either agent to reveal the name or nature of the website in question is to prejudice the jury, and potentially waste time and confuse the jury. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Obviously this evidence has the propensity to prejudice many against Mr. Singh. Even if jurors have not heard of myfreecams, anyone hearing about "performers" on an "adult entertainment website" will be inclined to believe that Mr. Singh was viewing live pornography, or at least live erotica, which to many is a vice and sin.

Moreover, if this evidence were admitted, the defense would seek, for the sake of completeness, to introduce Mr. Singh's statements to the agents characterizing the nature of his interest in the site. For example, according to the government's discovery, Mr. Singh also told

4

agents that myfreecams.com has many different types of sites, and that he was not interested in those that were pornographic, but rather those that focused on art. And he told them that although he believed that one of the webcam models whom he tipped the most sometimes engaged in pornography, he had never seen her in such a session. He also told them that individuals associated with the website harassed and threatened him, and that certain purchases/payments to myfreecams arose from this harassment and threats. All of this would be necessary to counter the jury's perception of Mr. Singh as someone who watched adult pornography online, but it would amount to a trial within a trial about exactly what myfreecams is, how broad its universe of offerings is, and whether Mr. Singh was paying money to watch pornography or for some other reason. Altogether, a discussion of the myfreecams site will divert the jury's attention from central issues, and waste their time, and this is all the more reason for the Court to exclude it. *See United States v. Hill*, 322 F.3d 301, 305-06 (4th Cir. 2003) (approving exclusion of defendant's proffered evidence that complainant had previously given a gift to another person and later maliciously sued for its return where the nature of that transaction was disputed and admitting it would have led to a confusing "case within a case"); *United States v. Heller*, Case No. 3:10-cr-161, 2010 WL 4961661 (E.D. Va. Nov. 30, 2010) (excluding evidence of child pornography files found on computer where charges stemmed from files found on unrelated CDs and DVDs, in part because the evidence would require a "trial within the trial," which could prejudice defendant, and confuse, distract and waste the time of the jury).

### III.     The evidence is not admissible pursuant to Rule 404(b).

Nor can the government meet the burden to admit this evidence pursuant to Rule 404(b), even if its disclosures to date are interpreted as sufficient notice under the rule.[3] Evidence of other

---

[3] The trial brief makes no mention of Rule 404(b), but states that the evidence is relevant to intent to defraud.

"bad acts" is only admissible if it is offered for a proper, non-propensity purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The evidence is not admissible unless it is probative of an essential claim or element of the offense and reliable, and its probative value is not substantially outweighed by confusion or unfair prejudice. *See United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017) (finding legal error in admission of defendant's prior conviction under this standard).

Again, the specific name and nature of myfreecams is not relevant to intent, because it is not essential for the government to prove how Mr. Singh spent money in his possession. It is only essential for the government to show which portions of money in his possession he did *not* spend on anything related to Sanaa, and that can be accomplished with more neutral descriptions of the site.

Nor is the evidence probative of Mr. Singh's motive. It is true that courts have held that "[e]vidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain." *United States v. Madden*, 38 F.3d 747, 751 (4th Cir. 1994) (quoting *United States v. Feldman*, 788 F.2d 544, 557 (9th Cir.1986), cert. denied, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987)). However, when the government attempts to "demonstrate some financial need to explain why the accused had a motive to do this illegal act," including with crimes or other "bad acts," courts "are faced with a difficult balancing question between admissibility under Rule 404(b) and prejudice under Rule 403." *Id.*

Striking the fair balance requires keeping the focus of such motive evidence on exactly what makes it relevant: "It is the financial need, not the particular act giving rise to the need that establishes the relevancy to motive in a 'financial crimes' prosecution." *Id.* at 752. For example, evidence that a defendant is a drug addict can be relevant, but only if the government establishes

6

"both that the accused has a significant drug habit or addiction and that he did not have the financial means to support it[.]" *Id.* "Just as a need to buy a pocket radio would not be admitted to establish motive to commit bank robbery, so too we do not believe that evidence of occasional drug use should be admitted; financial need is the key element to establish motive." *Id.* If the government fails "to demonstrate either that [a financial crime defendant's] drug use was significant or that whatever drug use there was created an extraordinary need for cash,'" *id.* at 752-53, evidence that a defendant is a drug user does nothing more than prejudice the jury. *Id.* (finding that error in admitting evidence of bank robbery defendant's drug use, without evidence that the use created financial need, was not harmless because "the prejudice of this evidence is great; [and] in this instance, there is no countervailing probative value to redeem the evidence").

If a defendant is a drug user, and his drug expenses exceeded his legitimate income, there is no other way for the jury to infer a financial motive without hearing evidence that the defendant is a drug addict and that his drugs cost more than he earned from legitimate funds: the government has no way to circumstantially show the motive without naming the vice. Moreover, because drug transactions are usually conducted in cash and typically only make people poorer, evidence of a financial crime defendant's drug addiction could help the government explain why the defendant appears to have nothing to show for his alleged offense. Thus, where drug addiction is offered to prove financial motive, the nature of the vice is central to the proof, and itself highly probative.

By contrast, here, the "financial need" can be established without mentioning the nature of the website, and the vice it may reflect. All the government need do is show that Mr. Singh was spending X amount of money on a website unrelated to the Sanaa business, and that the amount he spent exceeded his legitimate income: this is direct evidence of financial motive. *Madden,* 38 F.3d at 753 ("[D]irect evidence of financial need will suffice[.]"). And, the nature of the vice

7

underlying the financial need that the government will attempt to show is not probative at all because there is no missing money, or mystery about Mr. Singh's expenditures: the transactions on myfreecams were traceable, and quantifiable.

Thus, because "[i]t is the financial need, not the particular act giving rise to the need, that establishes the relevancy to motive in a 'financial crimes' prosecution[,]" *id.* at 752, and, in this case, that need can be established for the jury with "direct evidence," and without referring to myfreecams or the various content on that website, the name or nature of the website is not probative at all, let alone more probative than it is prejudicial and confusing. Thus, the Court should exclude it. *Hall*, 858 F.3d at 260; *see also* C.B. Mueller, L. C. Kirkpatrick, 1 Federal Evidence § 4:32, *Evidential uses of prior acts—Motive or opportunity*, (May 2020 update, 4th ed.) (noting that jurors approach cases "with enough common sense to appreciate the role of" motives as familiar as "self-enrichment," such that evidence of other "crimes" offered to show such motives "merit close scrutiny in this setting, and should be excluded if it promises more by way of prejudice and distraction than by increasing understanding of the issues in the case").

## CONCLUSION

WHEREFORE, Mr. Singh respectfully requests that the government be precluded from offering evidence, through any testimony or exhibit, of the name or nature of the myfreecams website, and that the government's evidence refer to the website with neutral terms, such as "a website unrelated to the fabric business or Sanaa," or "a single website," or "the website."

Respectfully submitted on October 7, 2020.

MANISH SINGH
by Counsel:

Geremy C. Kamens
Federal Public Defender

by:_____s/_____
Brooke Sealy Rupert, 79729
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0849
Facsimile: (703) 600-0880
Brooke_Rupert@fd.org

Ann Mason Rigby, 92996
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0869
Facsimile: (703) 600-0880
Ann_Rigby@fd.org

## **CERTIFICATE OF SERVICE**

I certify that on October 7, 2020, I filed a true and correct copy of the foregoing using the CM/ECF system, which will then serve an electronic copy on counsel of record.

           /s/
Ann Mason Rigby, 92996
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0849
Facsimile: (703) 600-0880
Brooke_Rupert@fd.org